(40 Misc. Rep. 57.)

PERRY v. WILLIAMS et al.

(Supreme Court, Special Term, Tompkins County. February, 1903.)

1. LIMITATIONS—RELEASE OF MORTGAGE—CANCELLATION.
    Plaintiff sued to cancel the discharge of a mortgage covering two tracts, one of 50 acres and one of .27 acres, and to reform it so that only the 27 acres should be released, on the ground that she supposed she was releasing only such smaller tract. *Held*, that the action was not barred until 10 years from the time plaintiff acquired knowledge of the mistake.

2. SAME—PLEADING—PERSONAL PRIVILEGE.
    In an action to reform a release of a mortgage as made by mistake, where the present owner of the property is made a defendant, but was not a party to the release, he cannot plead the statute of limitations. it being a personal privilege, especially where he had notice of the existence of the mortgage at the time he acquired his interest .in the property.

Action by Harriet C. Perry against George R. Williams and others. Judgment for plaintiff.

R. R. Moss (Richard H. Thurston, of counsel), for plaintiff.
S. Edwin Banks (J. T. Newman, of counsel), for defendant Williams.

FORBES, J. This is an action to set aside and cancel of record the discharge of a mortgage, and to reform said instrument as and for a release of said mortgage covering two parcels of land, of which it is claimed only the 27-acre piece was to have been released. This mort-. gage was for $800, given by Jerome Rowe to Josephine Holmes, dated April 1, 1861. It was assigned by Josephine Holmes to Margaret Archer April 1, 1871, and re-assigned to the plaintiff, Harriet C. Perry, by Nathaniel Archer, as the executor of the last will and testament of Margaret Archer, deceased, April 1, 1887, and was recorded January 4, 1888, in Liber I of Mortgages, page 336. This mortgage was, in form, discharged of record by the plaintiff December 23, 1887, recorded January 4, 1888, in Volume 7 of Discharge of Mortgages, page 36. Fannie P. Rowe became the grantee of the 27-acre parcel from F. J. Whiton by deed dated December 23, 1887; Mr. Whiton having purchased the 27-acre piece under a foreclosure of a small mortgage held by the Coon estate, which Van Cleef foreclosed. Defendant Williams is a trustee under the will of John Southworth, deceased. Williams, as trustee, became the owner and holder of a subsequent mortgage, dated May 1, 1861, executed by Jerome Rowe to Maria J. Hanmer, for $833.33, covering the 50-acre lot. This was assigned to Williams by the holder, one Van Duzen, June 27, 1894. George Williams, as trustee, foreclosed the Hanmer mortgage by a judgment of sale on the 19th day of May, 1900, after the mortgage in question had, in form, been satisfied and discharged.

The principal question for examination is the 10-year bar of the statute of limitations, pleaded as a defense to .a recovery in said action, so far as the more important legal proposition in this action is involved. It is held in the case of Oakes v. Howell, 27 How. Prac. 145:

"An action to reform a contract or instrument in writing for the sale of lands on the ground of mistake, accident, or inadvertence is barred by the

¶ 2. See Limitation of Actions, vol. 33, Cent. Dig. § 658.

ten-years statute of limitations from the time the cause of action accrued, and not as in cases of fraud."

In the case of Hoyt v. Putnam, 39 Hun, 402, it is held that an action to reform a deed must be brought within 10 years, when a party cannot recover land conveyed without first having his deed reformed.

In Sprague v. Cochran, 70 Hun, 512, 24 N. Y. Supp. 369, it is held that the statute of limitations is a bar to an action to reform a mortgage when the action is brought after 10 years to make, by parol evidence, said mortgage an equitable lien on land. But this case was reversed (see 144 N Y. 104, 38 N. E. 1000) upon the ground that the action was a continuing remedy, and also that that defense had been stricken from the pleading.

In Exkorn v. Exkorn, 1 App. Div. 124, 37 N. Y. Supp. 68, it was held:

"An action brought to reform a deed by inserting the plaintiff's name in the deed as a co-grantee with the defendant, resting solely upon the ground of mistake, is barred by the ten-year statute of limitations. The provision of Code of Civil Procedure (section 382, subd. 5), that in certain cases the cause of action is not deemed to have accrued until the discovery by the plaintiff of the facts constituting a fraud, is limited entirely to cases of fraud, and no such rule is applicable to a case where the action is based simply on a mistake."

In the case of Campbell v. Culver (4th Dept.) 56 App. Div. 591, 67 N. Y. Supp. 469, it is held:

"Where the plaintiff's action is founded upon a breach of contract, and not upon fraud, the provision of subdivision 5 of section 382 of the Code of Civil Procedure, declaring that in certain cases a cause of action is not deemed to have accrued until a discovery by the plaintiff of the facts constituting the same, has no application."

If these authorities are in point, and apply to the case at bar, this action probably could not be maintained. There is still another class of cases that may be applicable.

In Gallup v. Bernd, 132 N. Y. 370, 30 N. E. 743, it was held: In an action, commenced in 1887, to recover an alleged balance unpaid of the purchase price of a farm sold and conveyed in 1880 by plaintiff to the defendant, the defendant set up as a counterclaim, and the referee found, in substance, that the sale was by the acre; that plaintiff represented that there were 230 acres in the farm, whereas there were only 211 acres, the plaintiff having paid for 230 acres. The plaintiff did not discover the discrepancy until shortly before the commencement of this action. The referee found that the agreement was the result of a mutual mistake. The defendant demanded a reformation of the contract and an allowance for the deficiency. It was held that the 10-year limitation applied, and that the defendant was entitled to the relief sought.

Bartlett v. Judd, 21 N. Y. 200, 78 Am. Dec. 131, was an action of ejectment for land claimed to be conveyed by a sheriff's deed upon sale under execution. A sheriff's deed of land "conveyed by A. B." to the defendant was construed as covering land conveyed to the latter, through mesne conveyance, by A. B.'s grantees. The sheriff's deed was reformed in accordance with the facts, and the demand of the defendant in his answer. "The statute of limitations, if ever a bar

to such relief upon the application of a defendant, does not commence running until he is charged with knowledge of the plaintiff's assertion of a claim under the deed inconsistent with the actual exception made at the sale."

Miner v. Beekman, 50 N. Y. 337, was an action by an owner in relation to real property held by a mortgagee in possession, seeking for an accounting, and for liberty to pay the amount ascertained to be due upon the mortgage, and upon that payment to be let into possession. Held, that the action is not embraced within the 10-year limitation.

In Reitz v. Reitz, 80 N. Y. 538:

"This action was commenced in 1867. The lands were conveyed to de-. fendant in 1854. His mother, for whom he acted as agent, and with whose money he made the purchase, died in 1866. Defendant did not assume to own the property, or deny her right thereto, until after her death, and she had no knowledge that the deed had been taken in his name. Held that, until the happening of one or the other of these events, the cause of action did not accrue, and that, therefore, the action was not barred by the statute of limitations."

Perrior v. Peck, 39 App. Div. 390, 57 N. Y. Supp. 377, is an action where a grantee in possession of land under a deed set up a defense in an action of ejectment attacking the title, and sought a reformation of his conveyance. "In such a case the statute of limitations does not begin to run against his right to a reformation of his deed until he knows of the distinct flaw in the deed, or becomes cognizant of the adverse claim." The mistake was made by the scrivener. This case was affirmed in 167 N. Y. 582, 60 N. E. 1118.

The case of Sprague v. Cochran, supra, was reversed in 144 N. Y. 104, 38 N. E. 1000. The doctrine of the statute of limitations was not passed upon. Still the court said: "Even if that feature of the case still remained, the statute of limitations would probably be a sufficient answer."

In De Forest v. Walters, 153 N. Y. 229, 47 N. E. 294, the defendants set up certain facts as a defense and as a basis for reforming a defective deed. The court held:

"In such an action, and under such circumstances, it has been held that the statute of limitations, if applicable at all, does not begin to run until the party against whom it is invoked is charged with knowledge of an assertion of some adverse claim under the deed." Page 241, 153 N. Y., and page 297, 47 N. E.

It will be seen that in the last-cited authorities the question turned upon the continuing right of action, and in such cases it was held that the statute did not commence to run nor did the action accrue until the party aggrieved had knowledge that a mistake had been made in the instrument sought to be reformed.

The plaintiff claims that the defendant Williams and his cestui que trust were not parties to the discharge of the mortgage in question, and are not in privity with the plaintiff; that, therefore, the statute of limitations does not apply, since the statute is a personal defense of the party aggrieved, and cannot be taken advantage of by another; since the party aggrieved has the right to waive that defense, if he choose, or may adjust the demand in any manner in which he may see

fit. There is a class of defenses which are personal, and these defenses cannot be successfully interposed by any one save the party, or some one in privity with him. Such is the defense of usury. So it is held in Sands v. Church, 6 N. Y. 347:

"Persons who accept a lien upon or interest in the equity of redemption of mortgaged premises, as mortgagees or purchasers, expressly subject to the lien of the prior mortgage, cannot avail themselves of usury in such mortgage, in defense to a suit for its foreclosure."

In Williams v. Tilt, 36 N. Y. 319, it is held:

"A usurious agreement cannot be assailed by one not a party to it, or not claiming under the party injuriously affected by it."

The opinion in this case gives a variety of illustrations.

In Amherst College v. Ritch, 151 N. Y. 282, 335, 45 N. E. 876, 891, 37 L. R. A. 305, is another illustration of the doctrine, where it is held:

"The state, through its Attorney General, cannot, by legal proceedings, raise the question, or prevent the gift from taking effect in accordance with the wishes of the testator. The rights springing from the statute are personal, the same as the rights of a borrower under the statute of usury, and they can be waived or relinquished in the same way"—citing Williams v. Tilt, supra.

In Chapuis v. Mathot, 91 Hun, 565, 36 N. Y. Supp. 835, it is held:

"The right to set up usury is personal, and the usurious contract is only avoidable by the borrower, and those in privity with or claiming under him."

This case was affirmed in 155 N. Y. 641, 49 N. E. 1094, on the opinion below.

In Laux v. Gildersleeve, 23 App. Div. 352, 48 N. Y. Supp. 301, it is held:

"The defense of usury is available not only to parties, but also to privies, to a contract of guaranty, in an action brought upon a note given as a substitute for or in renewal of the guaranty; but where the defendants, although aware of the existence of the defense, fail to plead it, it must be considered to have been waived by them."

In East River Nat. Bank v. Adams (Sup.) 4 N. Y. Supp. 366, it is held:

"The defense of usury is available only to the debtor, and cannot be raised by creditors of such debtor."

In the case at bar the defendant Williams took an assignment of a subsequent mortgage covering the 50 acres of land, also covered by the plaintiff's mortgage. The plaintiff's sister, Mrs. Fannie P. Rowe, purchased the piece containing the 27 acres, and it is asserted that the agreement was that the plaintiff was to release from the operation of her mortgage in question the 27 acres owned by her sister; said mortgage standing in plaintiff's name, and covering both premises, the 50 and the 27 acre pieces. An instrument was drawn by George B. Davis, acting as attorney for Caroline Rowe, sister of the deceased mortgagor, who was the husband of Fannie P. Rowe. This paper was presented at the window of the post office for the plaintiff to sign and acknowledge. She claims that she did not read it, nor did she know its contents, except as they were stated by Mr. Davis.

This instrument now turns out to have been an absolute discharge of the mortgage as a security on the 50-acre piece covered by the subsequent mortgage, assigned to the defendant Williams, and by him foreclosed. The plaintiff claims that she did not discover the mistake in the instrument or its nature, but supposed and believed that the instrument was only a release of the 27 acres owned by her sister. The records show the discharge and cancellation of the entire mortgage as a lien upon the premises, and that record was known to the defendant Williams when he took the subsequent mortgage.

Plaintiff contends, and it is supported by sufficient evidence in that contention, that Williams knew at the time he took the subsequent mortgage that the plaintiff's mortgage was still a lien upon said premises. This fact was disclosed to him by her sister, Fannie P. Rowe, who introduced Caroline Rowe to the defendant Williams. This evidence is also supported by the subsequent declaration of Williams to the plaintiff and Mr. Moss, who were witnesses on the trial; and, while Mr. Williams seeks to deny any knowledge of a prior mortgage, except as he found the same upon the record and discharge, his cross-examination and a letter written by him October 19, 1893, to Mr. Van Duzen, the assignor of the mortgage to Williams, show that there is serious doubt about the version which he gives of the transaction concerning his knowledge of the plaintiff's mortgage. While the defendant Williams admits that the fact of the existence of the mortgage was communicated to him at some time, he insists that it was after the mortgage had been purchased by and assigned to him. He bases that recollection upon the theory that he had never seen the witness Fannie P. Rowe until subsequent to that time, but be admits the introduction by Fannie P. Rowe of Caroline Rowe to him. After the letter was shown to him, and his attention was called to the date, he would not swear positively that the conversation was after the mortgage was taken by him; and, indeed, in the letter he writes that, before the mortgage was transferred, Caroline Rowe had been at his office; and I think he was honestly mistaken about the time. The fact was communicated to him, and his subsequent examination of the record was relied upon by him in taking said mortgage, and he had probably forgotten the conversation with Caroline and Fannie Rowe, who were sisters-in-law. Caroline subsequently died.

If the doctrine that the defense interposed is personal, and cannot be raised by the defendant Williams, in my view of the evidence given on the trial a judgment should be ordered for the plaintiff for the relief demanded in her complaint; and judgment is ordered accordingly, with costs.

Judgment accordingly.